IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEMUEL CRAFT, | ) | CASE NO. 1:12-CV-487 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | REPORT & RECOMMENDATION |
| | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("the "Commissioner" or "Defendant") denying Plaintiff Lemuel Craft's application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth herein, the undersigned recommends the decision of the Commissioner be VACATED.

I. INTRODUCTION & PROCEDURAL HISTORY

On May 26, 2009, Plaintiff Lemuel Craft ("Plaintiff" or "Craft") protectively applied for a Period of Disability and Disability Insurance benefits. (Tr. 10, 101). These benefits expired on December 31, 2009. (Tr. 10, 102). On May 27, 2009, Craft protectively applied for Supplemental Security Income benefits. (Tr. 10, 100, 188-92). In both applications, Plaintiff alleged he became disabled on August 8, 2006, due to suffering from HIV and joint pain in his

hips. (Tr. 217). The Social Security Administration denied Plaintiff's applications initially and upon reconsideration. (Tr. 100-09). Subsequently, Craft requested that his applications be reviewed by an administrative law judge. (Tr. 136-37). The administration granted Craft's request and scheduled a hearing. (Tr. 138-39, 146-52).

On June 17, 2011, Administrative Law Judge Neil Sullivan (the "ALJ") convened a hearing via video to evaluate Plaintiff's applications. (Tr. 29-71). The ALJ presided over the hearing from St. Louis, Missouri, and Plaintiff, along with his attorney, appeared in Cleveland, Ohio. (Tr. 10, 31). During the proceeding, the ALJ heard testimony from Plaintiff and vocational expert, Deborah Lee. (Tr. 29-71).

On September 12, 2011, the ALJ issued an unfavorable decision denying Craft's applications for benefits. (Tr. 10-23). Thereafter, Craft sought review of the ALJ's decision from the Appeals Council. (Tr. 175-76). But, the council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Craft now seeks judicial review of the Commissioner's decision. Judicial review is proper pursuant to 42 U.S.C. § 405(g).

## II. PERSONAL & MEDICAL EVIDENCE[1]

Craft was born on March 1, 1966, and was 45 years old on the date of his hearing before the ALJ. (Tr. 34). Accordingly, he was considered as a "younger person" for Social Security purposes. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). Craft earned his GED and has received

---

[1] The following recital of Plaintiff's medical record is merely an overview of the medical evidence pertinent to Plaintiff's appeal. It is not intended to reflect all of the medical evidence of record. Plaintiff only challenged the ALJ's evaluation of his mental impairments, therefore, the Court's discussion is limited to that portion of the medical record.

2

some vocational training in carpentry. (Tr. 36-37). He has past experience working as a gas station attendant, welder and construction worker. (Tr. 64).

Plaintiff suffers from mental disorders generally stemming from his diagnosis of HIV. On September 9, 2009, Plaintiff presented to Dr. David House for a consultative evaluation. (Tr. 519-24). During the examination, Dr. House evaluated Craft's mental health. The doctor noted Plaintiff was appropriately dressed and displayed adequate eye contact. (Tr. 521). Plaintiff admitted to a past suicide attempt, but denied any current suicidal thoughts. (*Id*.). Dr. House expressed that Craft would require "supervision in the management of his daily activities and in the handling of his financial affairs." (Tr. 522).

In summarizing his findings, Dr. House diagnosed Plaintiff with "Mood disorder secondary to HIV infection with major depressive features and Polysubstance Abuse in reported remission." (Tr. 523). Dr. House also evaluated Craft's ability to perform certain work-related tasks. Dr. House opined that Craft's ability to maintain the attention, concentration, persistence and pace needed to perform simple tasks was only mildly limited. (Tr. 523). Additionally, Dr. House concluded Plaintiff suffered from moderate limitations in his ability to withstand the stresses and pressures of day-to-day work and to relate to others. (*Id*.). However, the doctor found that Plaintiff's ability to understand, remember and follow instructions was not impaired. (*Id*.). In addition to assessing Plaintiff's abilities in these four domains, Dr. House also commented on Plaintiff's level of adaptability and insight. Dr. House stated that Plaintiff's level of adaptability was markedly limited and that Craft's "[i]nsight into his current situation and overall level of judgment appear[ed] markedly limited." (*Id*.). Dr. House's report concluded by stating Craft "demonstrate[d] [a] serious impairment in employability and social interaction." (Tr. 524).

Subsequently, on September 24, 2009, state agency physician, Dr. Marianne Collins, conducted a review of Plaintiff's medical record and evaluated his mental residual functional capacity. (Tr. 525-42). Dr. Collins' diagnosis of Plaintiff's mental impairments mirrored that of Dr. House. (Tr. 541). In addition, Dr. Collins made specific reference to Dr. House's findings regarding Plaintiff's abilities to: 1) understand, remember and follow instructions; 2) maintain attention, concentration, persistence and pace; 3) relate to others; and 4) withstand the stresses and pressures associated with day-to-day work. (*Id.*). She indicated that she gave weight to these findings illustrating Craft's functioning. On May 10, 2010, state agency physician, Dr. Carl Tishler, affirmed Dr. Collins' assessment as written. (Tr. 651).

### III.  ALJ's RULING

The ALJ made the following relevant findings of fact and conclusions of law. At step one of the sequential analysis,[2] the ALJ determined Craft had not engaged in substantial gainful

---

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. § 404.1520(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her

activity since August 8, 2006, Craft's alleged onset date.  (Tr. 12).  At step two, the ALJ held Plaintiff suffered from the following severe impairments:  HIV, a residual strain of the hip joints, hypercholesterolemia, obesity, depression, a urological disorder, polysubstance abuse in reported remission, and a mood disorder with major depressive features.  (Tr. 12-13).  But, at step three, the ALJ ruled that none of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 13-14).  Before moving to the next step, the ALJ assessed Craft's residual functional capacity ("RFC") to work.  (Tr. 14-21).  The ALJ determined Plaintiff retained the physical ability to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c).  (Tr. 14).  However, the ALJ limited Craft to jobs involving "simple, routine, and repetitive tasks in a workplace that required no more than occasional interaction with the public."  (*Id*.).  Because the ALJ found Plaintiff was so equipped, at step four, the ALJ concluded Plaintiff was capable of returning to his past work as either a production welder or construction worker.  (Tr. 21).  Alternatively, at step five, the ALJ determined there were other jobs, existing in significant numbers in the national economy which Plaintiff could perform, such as that of a kitchen helper, industrial cleaner or hand packager.  (Tr. 21-22).  Therefore, the ALJ ruled Plaintiff was not disabled.  (Tr. 22-23).

## IV.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security

---

residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)*.*  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*.  Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989)*.*

6

VI. ANALYSIS

Plaintiff only challenges the ALJ's ruling on one ground. Craft maintains the ALJ's RFC assessment is not supported by substantial evidence because the ALJ did not give sufficient weight to the opinions of Dr. David House, the consultative psychologist who performed a one-time examination of Plaintiff.

Substantial evidence does not support the ALJ's RFC assessment. Prior to assessing a claimant's RFC, the ALJ must determine whether the claimant meets or medically equals one of the named impairments recognized by the administration at step three of the sequential analysis. In this case, the ALJ indicated he considered whether Plaintiff met or equaled Listing 12.04, the designation for affective disorders. In order to meet or equal the listing, a claimant must satisfy the criteria set forth in paragraphs A and B of the listing, or, alternatively, the criteria in paragraph C of the listing. The criteria in paragraph B of Listing 12.04 asked the ALJ to evaluate Craft's level of impairment in four specific areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence or pace; and 4) episodes of decompensation. 20 C.F.R. Pt. 404, Sbpt. P, App'x 1, § 12.00(B). In order to meet or equal listing 12.04, Craft had to show that he suffered from marked limitations in at least two of these areas. *Id.*

In the case *sub judice*, the ALJ ruled Plaintiff did not satisfy the paragraph B criteria because Craft did not suffer from marked impairments in any of the enumerated areas. The ALJ found Plaintiff only suffered from a mild restriction in daily activities. Additionally, the ALJ indicated Plaintiff experienced no more than moderate difficulties in the areas of social functioning and concentration, persistence or pace. Finally, the ALJ found Craft had not experienced any episodes of decompensation. However, the ALJ acknowledged Dr. House's findings reflecting that Plaintiff displayed marked limitations in the areas of adaptability and

insight and judgment. But, the ALJ explained that these findings did not demonstrate that Plaintiff's impairments met or equaled listing level because these areas "fell outside of the functional domains" examined under paragraph B of the listing. (Tr. 14). Therefore, the ALJ concluded Plaintiff did not satisfy the paragraph B criteria.

Despite the ALJ's early acknowledgement of these marked findings by Dr. House, the ALJ failed to explain how they impacted his ultimate RFC assessment. In fact, to the contrary, the ALJ indicated he assigned "significant weight" to the doctor's opinion, and provided five detailed reasons for doing so. Although Craft's level of adaptability and insight and judgment may not have been critical to determining whether his impairments met or equaled listing level, these factors were significant in evaluating his RFC.

The regulations explain that a claimant's RFC "is a multidimensional description of the work-related abilities [the claimant] retain[s] in spite of [his or her] medical impairments." 20 C.F.R. Pt. 404, Sbpt. P, App'x 1, § 12.00(A). In other words, it represents the most the claimant can do despite one's limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The regulations provide examples of basic work activities and the "abilities and aptitudes necessary to do most jobs", and expressly refer to a claimant's "[u]se of judgment" and ability to "[d]eal[] with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b)(4) & (6); 416.921(b)(4) & (6). Accordingly, Craft's ability to adapt and his insight and judgment were particularly relevant to the ALJ's assessment of his ability to work.

Although the ALJ provided a lengthy analysis of how he reached his RFC assessment, it fails to convey how or why the ALJ severed the portion of Dr. House's findings showing marked limitations and severe impairments in employability from the remainder of the doctor's findings which the ALJ credited. The Court notes, as did the ALJ, that Dr. House is a licensed

psychologist recognized by the administration as "highly qualified" and as an "expert" in the area of disability evaluation. (Tr. 18); *see* 20 C.F.R. §§ 404.1527(e)(2)(i); 416.927(e)(2)(i). Given his level of expertise, and in light of the fact that he was the only physician to personally examine Plaintiff in relation to his mental impairments, the ALJ's evaluation of Dr. House's findings reflecting marked limitations was of great import as the ALJ was responsible for building an "accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D.Ohio 2011) (Lioi, J.) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

The Commissioner's attempts to justify the ALJ's actions are unavailing for several reasons. First, the undersigned's review of the ALJ's decision is limited to consideration of the reasoning supplied by the ALJ; it is improper for the Court to affirm the ALJ's decision based upon the post hoc rationalizations submitted by the Commissioner. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009); *Martinez v. Comm'r of Soc. Sec.*, 692 F. Supp.2d 822, 826 (N.D.Ohio 2010). Second, although the ALJ's RFC is consistent with the conclusions reached by state agency physician, Dr. Marianne Collins, her opinion does not explain why Dr. House's findings regarding Plaintiff's insight, judgment and adaptability should not have been credited. In fact, Dr. Collins made no mention of Plaintiff's problems in these areas although it appears that Dr. Collins' findings were based primarily upon her review of Dr. House's evaluation of Plaintiff. Thus, consequently, her opinion sheds no light on why the ALJ discredited this portion of Dr. House's report. Presumably, the ALJ did not recognize the distinction between the two opinions, as he concluded that Dr. Collins' assessment was "entirely consistent" with Dr. House's findings and assigned it significant weight.

9

Finally, without some explanation provided by the ALJ, the Court cannot reconcile the ALJ's statement that he gave "significant weight" to Dr. House's opinion and the ALJ's failure to explain why he disregarded portions of the doctor's findings.  An ALJ may not "pick and chose the portions of a single report, relying on some and ignoring others, without offering some rationale for his decision." *Young v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 644, 649 (E.D.Mich. 2004).  Here, the ALJ clearly accepted parts of Dr. House's opinion, but provided no explanation of why he discounted other portions of the doctor's findings when assessing Craft's RFC.  While the ALJ provided sound reasons for omitting these findings during his review of Plaintiff's impairments at step three of the sequential analysis, this did not dispense the ALJ's duty to consider this evidence during his evaluation of Plaintiff's RFC.  Yet, after acknowledging the existence of these marked findings— which tend to support Plaintiff's disability applications— the ALJ ignored their relevance and import during his evaluation of Plaintiff's claim at the latter stages of the sequential analysis.  This constituted reversible error.  *See* 20 C.F.R §§ 404.1545(a)(3); 416.945(a)(3) (stating that the RFC assessment should be based upon the ALJ's consideration of *all* of the relevant medical evidence).

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner is not supported by substantial evidence. Accordingly, the Court recommends the decision of the Commissioner be VACATED and REMANDED to the Social Security Administration for further proceedings not inconsistent with this Report and Recommendation.

                                                s/ Kenneth S. McHargh
                                                Kenneth S. McHargh
                                                United States Magistrate Judge

Date: December 17, 2012.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).